**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**OCALA DIVISION**

UNITED STATES OF AMERICA

v.                                                    Case No. 5:24-cr-94-TPB-PRL

PHILLIP WASHINGTON, III,

    Defendant.
_____/

**ORDER DENYING "DEFENDANT'S MOTION TO SUPPRESS PHYSICAL AND TESTIMONIAL EVIDENCE BASED ON VIOLATIONS OF THE DEFENDANT'S FOURTH AMENDMENT RIGHTS"**

This matter is before the Court on "Defendant's Motion to Suppress Physical and Testimonial Evidence Based on Violations of the Defendant's Fourth Amendment Rights," filed by counsel on January 19, 2026.  (Doc. 22).  On February 2, 2026, the United States of America filed a response in opposition.  (Doc. 23). After reviewing the motion, response, court file, and the record, the Court finds as follows:

This motion concerns the validity of a search warrant.  Defendant Phillip Washington has been charged with one count of possession with intent to distribute controlled substances stemming from the execution of a search warrant in May 2024.  In 2024, the Marion County Unified Drug Enforcement Strike Team investigated Defendant as an individual "identified as a significant source of supply for narcotics to include methamphetamine, MDPV, and marijuana in the Marion County Area."  At that time, Defendant was identified as a "drug trafficker," with

numerous prior controlled substance convictions and two outstanding arrest warrants.

On April 22, 2024, law enforcement investigated a residence on SW 157th Street, which is where Defendant was believed to be located.  According to the probable cause affidavit submitted in support the search warrant issued in this case, an officer detected a strong odor of raw marijuana in front of the residence, noting it was stronger than that for personal use and consistent with a large or distribution amount of raw marijuana.  But by May 8, 2024, during a subsequent visit by law enforcement, it appears that the SW 157th Street residence was vacant.

On April 26, 2024, a confidential source provided information that a man named Matthew Wilkerson would be conducting a narcotics transaction with Defendant for a trafficking amount of narcotics.  Law enforcement conducted a traffic stop on Wilkerson, who fled and was pursued.  The confidential source advised law enforcement that while Wilkerson was fleeing, he was talking to Defendant and told Defendant that Wilkerson had thrown the narcotics out the window.  Law enforcement located approximately 975 grams of suspected MDPV (molly) along the roadside where Wilkerson had fled.  When Wilkerson was taken into custody, the GPS visible on the front screen of Wilkerson's cellular phone indicated that he was traveling to 3766 SE 134th Place in Belleview, Florida.

The probable cause affidavit submitted in support of the search warrant issued in this case alleges that the affiant learned that Defendant was possibly residing at 3766 SE 134th Place.  On May 9, 2024, law enforcement conducted

surveillance on that residence.  Officers smelled the strong odor of marijuana emanating from the property, and they noticed that the odor was strongest when located on the roadway directly in front of the residence (around 40 feet away).  On May 9, 2024, based on information set forth by law enforcement in a search warrant affidavit, Marion County Circuit Court Judge Lisa Herndon issued a residential search warrant for 3766 SE 134th Place relating to controlled substance violations.

On May 13, 2024, when the search warrant was executed, Defendant fled from the residence on foot and was subsequently detained.  Law enforcement detained three other individuals who were located in the backyard.  Agents located multiple controlled substances throughout various rooms in the residence, including approximately 3,264 grams of methamphetamine, 94 grams of crack cocaine, 202 grams of powder cocaine, 884 grams of fentanyl, 176 grams of THC infused cereal, and 5,225 grams of marijuana. Agents also located $33,940 in United States currency, a Springfield .45 caliber firearm, several cellular phones, and a DVR video security system.

Defendant was initially charged in state court with offenses arising from the items seized during the execution of the search warrant.  On August 6, 2024, he was indicted in the instant case.  Defendant challenges the search warrant, arguing that it was issued in the absence of probable cause and lacked any nexus between any alleged crime and the residence at issue.  Defendant seeks suppression of all evidence obtained as a result of the search, including controlled substances, paraphernalia and any firearms.

## Analysis

The Fourth Amendment to the United States Constitution provides that all persons have the right "to be secure in their person, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. amend. IV.  The Supreme Court has generally interpreted this to mean that a search must be based on probable cause and must be executed pursuant to a warrant.  *Katz v. United States*, 389 U.S. 347, 356-57 (1967).  To be valid, a warrant must be issued by a neutral and detached magistrate, be supported by probable cause based on oath or affirmation, and it must particularly describe the place to be searched and the things to be seized.  *Dalia v. United States*, 441 U.S. 238, 255 (1979).

Defendant moves to suppress the items found as a result of what he contends was an illegal search.  Defendant's complaints about the warrant – most notably, that the majority of information in the affidavit had "nothing to do with the target residence" and that the affidavit referenced Defendant's criminal history but "provided no significant details of the prior offenses" such as dates or locations – are not material to the existence of probable cause here.  Simply nitpicking the facts provided by law enforcement officers to a judge in support of an application for a warrant is insufficient to defeat an otherwise valid probable cause determination. See *Illinois v. Rodriguez,* 497 U.S. 177, 185 (1990) ("[W]hat is generally demanded of the many factual determinations that must regularly be made by agents of the government ... is not that they always be correct, but that they always be reasonable.").  Here, the information set forth in the affidavit indicated that there

was a fair probability that evidence of illegal marijuana possession would be found in the residence at 3766 SE 134th Place. *See, e.g.*, *United States v. Tobin*, 923 F.2d 1506, 1512 (11th Cir. 1991) (en banc).

Although Defendant argues that "recent legal developments . . . allow for the lawful possession of low-THC forms of the cannabis/marijuana plants, [and] the scent of suspected marijuana cannot alone supply probable cause or the issuance of a search warrant," such argument is not persuasive. An officer's detection of the odor of marijuana may provide the officer with probable cause to search. *See, e.g.*, *United States v. Johnson*, 445 F. App'x 311, 313 (11th Cir. 2011); *Smith*, 596 F. App'x at 807; *United States v. Tobin*, 923 F.2d 1506, 1512 (11th Cir. 1991) (*en banc*). And "the possession of marijuana is still illegal under federal law and is also illegal under Florida law, unless the possessor has medical marijuana authorization." *United States v. Axon*, No. 8:21-cr-374-VMC-CPT, 2023 WL 4927017, at *2 (M.D. Fla. Aug. 2, 2023) (Covington, J.). Consequently, detecting the odor of marijuana may certainly still establish probable cause to search a residence or vehicle in certain circumstances.

The Court recognizes that some Florida appellate courts, including the Fifth District Court of Appeal and Second District Court of Appeal, have now held that the plain smell of cannabis alone cannot generally provide grounds for reasonable suspicion or probable cause to support a search. *See Baxter v. State*, 389 So. 3d 803, 806 (Fla. 5th DCA 2024); *Williams v. State*, 421 So. 3d 809, 819 (Fla. 2d DCA 2025). The Court notes that the instant case appears to be factually distinguishable as the

probable cause affidavit specifically references the various marijuana odors detected by officers by describing the degree of odor as indicating a quantity more than mere personal use. More significantly, the appellate courts in the above cases upheld the searches in both of those cases after concluding that the officers reasonably relied on binding precedent at the time of the searches at issue. Both of these Florida appellate cases were decided *after* the events in the instant case, and so it would certainly appear that the officers in this case reasonably relied on binding precedent at the time of this search too.

Relatedly, even if the warrant were somehow defective, seized evidence may still be admitted if executing officers reasonably relied in objective good faith on a subsequently invalidated warrant that was issued by a detached and neutral magistrate. *See United States v. Leon*, 468 U.S. 897, 914-26 (1984); *United States v. Sutton*, No. 8:04-cr-325-T-17TBM, 2007 WL 705044, at *5 (M.D. Fla. March 2, 2007) (citing *Leon*). Defendant does not sufficiently explain how the warrant was so facially deficient that the executing officers could not reasonably presume that it was valid. Even if he did, searches conducted pursuant to a warrant "will rarely require any deep inquiry into reasonableness, for a warrant issued by a magistrate normally suffices to establish that a law enforcement officer had acted in good faith in conducting the search." *United States v. Robinson*, 336 F.3d 1293, 1296 (11th Cir. 2003). Here, officers obtained authorization for the warrant from an experienced, neutral, and detached state court circuit judge. *See, e.g., Herring v, United States*, 555 U.S. 135, 144 (2009); *United States v. Travers*, 233 F.3d 1327,

1329 (11th Cir. 2000).  Given these circumstances, there is no basis to question the reasonableness of law enforcement officers' reliance on the judge's authorization of the warrant.

For these reasons, "Defendant's Motion to Suppress Physical and Testimonial Evidence Based on Violations of the Defendant's Fourth Amendment Rights" (Doc. 22) is hereby **DENIED**.

**DONE and ORDERED** in Chambers, in Ocala, Florida, this 4th day of March, 2026.

TOM BARBER
UNITED STATES DISTRICT JUDGE